**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FLOYD ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 20-cv-1253 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| COOK COUNTY, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

After his conviction for unlawful possession of a weapon was vacated, Floyd Robinson ("Plaintiff") filed a complaint [16] against Cook County, Sheriff Tom Dart, Officer Michael Shaffer, and Officer Derrick Trice ("Defendants"). Plaintiff brings a Fourth Amendment claim for unlawful detention against the Defendant officers, a malicious prosecution claim against the Defendant officers and Sheriff Dart, and an indemnification claim against Cook County. [16, at 7–8]. Defendants have moved to dismiss all claims [18], arguing that there was probable cause to arrest Plaintiff and that the Defendant officers are entitled to qualified immunity. For the reasons stated below, Defendants' motion to dismiss [18] is granted. The Court gives Plaintiff leave to file an amended complaint no later than March 5, 2021, if he can do so consistent with this opinion and Federal Rule of Civil Procedure 11. This case is set for a telephonic status hearing on March 12, 2021 at 9:00 a.m. Participants should use the Court's toll-free, call-in number 877-336-1829, passcode is 6963747.

I.  **Background**[1]

In November 2015, Plaintiff was employed as a security guard for Universal Security. [16, at ¶ 12]. Two months earlier, the Illinois Department of Financial and Professional Regulation issued him a firearm control card. [*Id.*, at ¶ 13]. On November 12, 2015, Plaintiff drove to a gas station to pick up a drink and cigarettes during his lunchbreak. [*Id.*, at ¶ 15]. He brought his loaded firearm along in the backseat of the vehicle. [*Id.*, at ¶¶ 15–16]. Defendant officers pulled Plaintiff over for allegedly cutting off a car as he merged to turn into the gas station. [*Id.*, at ¶ 17]. Plaintiff cooperated with the officers, told them that he was a security guard and had a firearm in his car, and provided them with both his firearm owner identification card ("FOID Card") and his firearm control card ("tan card").[2] [*Id.*, at ¶¶ 18–19]. Defendant officers ordered Plaintiff to exit the vehicle, handcuffed him, and searched him and his car. [*Id.*, at ¶ 20]. They also "checked the Plaintiff's identification and uncovered that the Plaintiff's [FOID card] had been revoked following the issuance of an emergency order of protection against him." [*Id.*, at ¶ 21]. An emergency order of protection had been entered against Plaintiff on September 24, 2015, after an *ex parte* hearing. [*Id.*, at ¶¶ 32, 35]. The order of protection expired on October 15, 2015. [*Id.*, at ¶ 33]. Plaintiff informed the officers that he did not know of the order of protection or the revocation of his FOID card. [*Id.*, at ¶ 37]. Plaintiff alleges that the order "did not place any restrictions on the Plaintiff's ability to legally possess a firearm." [*Id.*, at ¶ 34].

---

[1] The Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).
[2] The parties and other courts refer to this card as a tan card, and the Court follows suit. See *Rabin v. Flynn*, 725 F.3d 628, 631 (7th Cir. 2013) ("The firearm control card is called a 'tan card' because of the unique tan color of the card.").

Defendant officers charged Plaintiff with unlawful possession of a weapon without a valid FOID card pursuant to 730 ILCS 5/24-1.6. [*Id.*, at ¶¶ 22–23]. On August 3, 2016, he was convicted of nine counts of aggravated unlawful use of a weapon. [*Id.*, at ¶ 39]. The charges were premised on the possession of a firearm without a valid FOID card and without a valid concealed carry license. [*Id.*]. Plaintiff was sentenced to one-year imprisonment and one-year supervised release. [*Id.*, at ¶ 40]. He was released from prison on March 14, 2018. [*Id.*, at ¶ 42]. On February 20, 2019, "Plaintiff's conviction was vacated by the trial court" in a manner "consistent with the Plaintiff's innocence." [*Id.*, at ¶ 44].

## II.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint typically must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S at 555). In determining whether the complaint meets this standard, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth*, 507 F.3d at 618.

## III.    Analysis

Defendants argue that the Court should dismiss Plaintiff's complaint because Defendants had probable cause to arrest and detain plaintiff, defeating both his Fourth Amendment claim and his malicious prosecution claim. Probable cause exists when "the facts and circumstances within

3

the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense." *United States v. Sawyer*, 224 F.3d 675, 678–79 (7th Cir. 2000). "Probable cause, however, does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *Id.*

### A. Fourth Amendment Claim

Plaintiff brings a Fourth Amendment claim for unlawful detention against the Defendant officers. He stylizes this complaint as a "*Manuel* Fourth Amendment" claim, invoking *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017). [16, at 7] (capitalization altered). Such a characterization suggests that Plaintiff challenges the constitutionality of his pretrial detention. See *Manuel*, 137 S. Ct. at 920 (stating the holding of the case as "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process"). Further, in his response to the motion to dismiss, Plaintiff argues that the Court should consider "not just what a reasonable officer would know at the time of the street stop, but also what could be learned by reading the statutes before charging." [21, at 3]. However, much of his complaint focuses on whether the Defendant officers had probable cause at the time of his arrest. [See 16, at ¶¶ 30–31, 38]. Accordingly, the Court construes Plaintiff's complaint as alleging both that the initial arrest was made without probable cause and that he was placed in pretrial detention without probable cause.

Although probable cause is often a factual determination, here it is primarily a legal one, requiring analysis of the statute under which Plaintiff was charged—namely, the aggravated unlawful use of a weapon statute ("UUW statute"), 720 Ill. Comp. Stat. 5/24-1.6; the Firearm Owners Identification Card Act ("FOID Act"), 430 Ill. Comp. Stat. Ann. 65; the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004 ("Private

Detective Act"), 225 Ill Comp. Stat. Ann. 447; and the law on orders of protection, 750 Ill. Comp. Stat. 60. In his response, Plaintiff argues that, based on these laws, Defendants lacked probable cause to arrest and detain him because he was subject to the security guard exemption to the UUW statute and because he did not need to maintain a valid FOID card. And in his complaint, Plaintiff argues that his FOID card was illegally revoked such that the revocation could not serve as the basis for probable cause. [16, at ¶¶ 36–38].

1. **The Security Guard Exemption to the UUW Statute**

The Illinois UUW statute makes it illegal to carry a weapon in any vehicle if "the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card" or if "the person possessing the weapon had an order of protection issued against him or her within the previous 2 years." 720 Ill. Comp. Stat. Ann. 5/24-1.6(a). There are several exemptions to this statute, including one for "[p]ersons licensed as private security contractors * * * if their duties include the carrying of a weapon * * * while actually engaged in the performance of the duties of their employment or commuting between their homes and places of employment" 720 Ill. Comp. Stat. Ann. 5/24-2(a)(5). It also exempts "[a]ny person regularly employed in a commercial or industrial operation as a security guard for the protection of persons employed and private property related to such commercial or industrial operation, while actually engaged in the performance of his or her duty or traveling between sites or properties belonging to the employer." 720 Ill. Comp. Stat. Ann. 5/24-2(a)(6). To be eligible for these exemptions, a security contractor must have a tan card. 720 Ill. Comp. Stat. Ann. 5/24-2(a)(5)–(6).

Plaintiff argues that he qualified for this exemption both because he was commuting and because he was engaged in his duties. [21, at 5–6]. To qualify for the exemption because he was commuting, Plaintiff must have been "commuting between [his] home[] and place[] of

5

employment," 720 Ill. Comp. Stat. Ann. 5/24-2(a)(5), or "traveling between sites or properties belonging to the employer," 720 Ill. Comp. Stat. Ann. 5/24-2(a)(6). Plaintiff takes issue with this standard, arguing that he need only have been "commuting directly from [his] place of employment." [21, at 6] (quoting 225 Ill. Comp. Stat. 447/35-35). But in doing so, Plaintiff quotes from the Private Detective Act, not from the statute delineating exemptions to the UUW statute.

In support of the argument that he was commuting, Plaintiff cites to *People v. Francis*, 368 N.E.2d 415, 419 (Ill. App. 1977), modified, 383 N.E.2d 161 (Ill. 1978). [21, at 5–6]. In that criminal case, police pulled over a security guard and the security guard told the police that he had just gotten off of work and was "on his way to purchase cigarettes." *Id.* at 417–18. The court found that the fact that the "defendant's testimony shows he was on his way to purchase cigarettes is not significant enough to disqualify him from the coverage of the exemption, since buying a pack of cigarettes cannot be considered to be his ultimate destination." *Id.* 419. Here, in contrast, Plaintiff's shift had not ended and instead he was running an errand on a lunch break. Further, *Francis* was a criminal case, and the court determined that "[t]he State must prove beyond a reasonable doubt that defendant was not covered by the exemption." *Id.* This standard is different than the one that applies in this case, where the issue is whether Defendants had probable cause to believe that Plaintiff violated the UUW statute. Moreover, on appeal, the Illinois Supreme Court remanded for a new trial after it concluded that the *Francis* appellate court applied the wrong standard, determining that the defendant must prove entitlement to the exemption by a preponderance of the evidence. See *People v. Francis*, 383 N.E.2d 161, 163–64 (Ill. 1978). Thus, *Francis* does not help Plaintiff here, and he does not qualify for the exemption because he was commuting.

Next, Plaintiff asserts that he was "actually engaged in the performance of" his duties. [21, at 5–6]; 720 Ill. Comp. Stat. Ann. 5/24-2(a)(5)–(6). Specifically, he argues that he qualified for the exemption because he was "performing employee-sanctioned duties" by "taking a work-sanctioned break." [21, at 5]. He relies on *People v. Johnson*, 327 N.E.2d 424 (Ill. App. 1975), where the court found that a security guard was engaged in work-related duties when he was "picking up supplies for the tavern to which he was assigned." *Id.* at 426. The court explained that the record did not contain any evidence that he was "on a private jaunt unrelated to his employment." *Id.* at 426–27. Here however, Plaintiff was taking a break to purchase cigarettes and a drink. [16, at ¶¶ 15, 17]. Although this break was permitted by his employer, he does not allege that it was part of his duties. Instead, it was "a private jaunt unrelated to his employment." *Johnson*, 327 N.E.2d at 426–27; see also *Snodgrass v. Jones*, 755 F. Supp. 826, 829 (C.D. Ill. 1991), aff'd, 957 F.2d 482 (7th Cir. 1992) ("Illinois recognizes the distinction between frolic (pursuit of an employee's personal business unrelated to employment) and detour (an employee's deviation for personal reasons that is nonetheless seen as sufficiently related to employment)."). In short, accepting as true the allegations of the complaint, Plaintiff does not qualify for the security guard exemption to the UUW statute and thus cannot negate probable cause on that basis.[3]

### 2. Plaintiff's Tan Card

Plaintiff also argues that regardless of whether he qualified for the security guard exemption, Defendants lacked probable cause to arrest or detain him because his tan card alone

---

[3] Under Illinois law, "observation of a Firearm Owner's Identification Card in the possession of a person whose Firearm Owner's Identification Card has been revoked constitutes a sufficient basis for the arrest of that person." 430 Ill. Comp. Stat. Ann. 65/9.5(e). Plaintiff alleges that before they arrested him, Defendant officers "uncovered that the Plaintiff's [FOID card] had been revoked." [16, ¶ 21]. Accordingly, Defendant officers had probable cause to arrest Plaintiff under this statute as well. See *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) ("[P]robable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause.").

permitted him to have a firearm. [21, at 8–9]. Pursuant to the Private Detective Act, the Illinois Department of Financial and Professional Regulation ("IDFPR") can issue tan cards to qualifying individuals. 225 Ill. Comp. Stat. 447/5-10. Plaintiff insists that "the Act under which the Plaintiff legally possessed his gun explicitly did not require a valid FOID card." [21, at 8]. Plaintiff does not provide a citation to support this assertion, but, based on the remainder of Plaintiff's briefing, the Court presumes Plaintiff relies on the following provision of the Private Detective Act:

> Possession of a valid firearm control card allows a licensee or employee to carry a firearm not otherwise prohibited by law while the licensee or employee is engaged in the performance of his or her duties or while the licensee or employee is commuting directly to or from the licensee's or employee's place or places of employment.

225 Ill. Comp. Stat. Ann. 447/35-35(c). Plaintiff concedes that the IDFPR may only issue tan cars to individuals with valid FOID cards. 225 Ill. Comp. Stat. Ann. 447/35-35(d) ("The Department shall issue a firearm control card to a person who has passed an approved firearm training course, who is currently licensed or employed by an agency licensed by this Act and has met all the requirements of this Act, *and who possesses a valid firearm owner identification card*." (emphasis added)); [16, at ¶ 25]. But Plaintiff asserts that "there is no statute that requires the holder [to] *maintain* a valid FOID card." [16, at ¶ 25] (emphasis added). Although the Private Detective Act does not expressly use the word "maintain," it does require the IDFPR to revoke a tan card if the holder fails to possess a valid FOID card. 225 Ill. Comp. Stat. Ann. 447/35-35(f) ("The Department shall refuse to issue or *shall revoke* a firearm control card if the applicant or holder fails to possess a valid firearm owners identification card without hearing." (emphasis added)). This requirement indicates that, contrary to Plaintiff's assertion, a tan card does not exempt one from the obligation to possess a valid FOID card, nor can possession of a valid tan card alone negate probable cause Defendants had to arrest and detain Plaintiff.

Further, even if Plaintiff were right on this point, the Defendant officers likely would be entitled to qualified immunity. That is, even if Plaintiff's tan card alone permitted him to carry his firearm in his car, such right is likely not clearly established. "A right is clearly established 'when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear' that 'every reasonable official would have understood that what he is doing violates that right.'" *Xiong v. Wagner*, 700 F.3d 282, 289 (7th Cir. 2012) (alterations in original) (quoting *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473–74 (7th Cir. 2011)). A plaintiff need not cite "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Here, Plaintiff has not cited to any case on how to interpret the relationship between the UUW statute and Private Detective Act. And Plaintiff's interpretation—that the Private Detective Act provides another exemption to the UUW statute—is not so obvious as to be "beyond debate." *Id.*

Moreover, even assuming that the Private Detective Act does provide another exemption to the UUW statute, it is not clearly established that such exemption would apply here. Section 35-35(c) of the Private Detective Act permits tan card holders "to carry a firearm not otherwise prohibited by law while the licensee or employee is engaged in the performance of his or her duties or while the licensee or employee is commuting directly to or from the licensee's or employee's place or places of employment." 225 Ill. Comp. Stat. Ann. 447/35-35(c). As described above, Plaintiff was not engaged in the performance of his duties. And whether driving to a gas station on a lunch break is "*commuting* directly to or from the licensee's or employee's place or places of employment" likewise is a question without a clear-cut legal answer. *Id.* (emphasis added).

Although the doctrine of qualified immunity has faced increased scrutiny in recent months, under the current state of the law the doctrine continues to protect "'all but the plainly incompetent

9

or those who knowingly violate the law.'" *Dix v. Edelman Financial Services, LLC*, 978 F.3d 507, 518 (7th Cir. 2020) (quoting *Allin v. City of Springfield*, 845 F.3d 858, 862 (7th Cir. 2017), and *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). Here, as Defendants made the decisions whether to arrest and detain Plaintiff, they faced multiple challenging issues in regard to both the facts that unfolded and the law that applied to those facts. Even if years later, with the benefit of careful analysis, a court *might* conclude that Defendants had a mistaken view of the law as it applied to the full development of the facts after investigation, trial, and post-judgment rulings, there is no basis for concluding on the current complaint and the cases cited that Defendants were either incompetent or that they knowingly violated the law.

### 3. Revocation of Plaintiff's FOID Card

In his complaint, Plaintiff claims that his FOID card was illegally revoked and that Defendants should have known that his right to carry a firearm was never restricted. [16, at ¶¶ 37–38]. Illinois law prohibits "a respondent against whom an order of protection was issued from possessing any firearms during the duration of the order" only if the order "was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate." 750 Ill. Comp. Stat. Ann. 60/214(14.5)(a). If this occurs, the court should order the respondent to "turn[] over" his or her FOID card to "the local law enforcement agency." *Id.* Here, the order of protection was entered after an *ex parte* hearing, and it expired before Plaintiff's arrest. [16, at ¶¶ 32–35]. Plaintiff was never asked to turn over his FOID card. Therefore, the order of protection should not have limited Plaintiff's ability to carry a firearm on the day of his arrest, November 12, 2015.

However, Plaintiff did not make this argument in his response brief. See *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or

issue not raised in response to a motion to dismiss * * *."). Moreover, Plaintiff's complaint never states facts sufficient to demonstrate that Defendants knew that his FOID card had been wrongfully revoked or that Defendants learned of any information to negate probable cause. He states that he "informed the officers that he was unaware of [the] order of protection and that his FOID card had allegedly been revoked." [16, at ¶ 37]. However, officers need not accept a suspect's denial of wrongdoing. See *Williamson v. Curran*, 714 F.3d 432, 441 (7th Cir. 2013) (explaining that officers may rely on information from eyewitnesses in making an arrest and that "[t]his is so even when the suspect denies an accusation of wrongdoing"); *Reynolds v. Jamison*, 488 F.3d 756, 762 (7th Cir. 2007) (concluding that the defendant's "denial does not negate probable cause for his arrest"). Although Plaintiff alleges that his conviction was vacated after his appeal in a manner consistent with his innocence, he never alleges that Defendants learned information between his arrest and conviction that would have eliminated their probable cause. Therefore, the complaint does not allege facts sufficient to demonstrate that Defendants arrested or detained Plaintiff without probable cause.

      **B.**     **Malicious Prosecution Claim**

Plaintiff also brings a malicious prosecution claim. [16, at ¶¶ 46–50]. "To establish a claim for malicious prosecution under Illinois law, plaintiffs must establish five elements: (1) commencement or continuation of an original proceeding; (2) termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages." *Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016). "For a malicious prosecution claim, probable cause is determined based upon the facts known to the prosecution at the time of filing." *Id.*

The same probable-cause analysis that applies to the previous claim applies to this one as well. However, "[p]robable cause as to one charge will not bar a malicious prosecution claim

11

based on a second, distinct charge as to which probable cause was lacking." *Holmes*, 511 F.3d at 682. Plaintiff alleges that some of his convictions were premised on "the possession of a firearm without a valid concealed carry license." [16, at ¶ 39]. Because the analysis set forth above addresses Plaintiff's lack of a FOID card, it does not fully cover Plaintiff's malicious prosecution claim.

The UUW statute makes it illegal to possess a firearm in a vehicle if (1) the firearm was "uncased, loaded, and immediately accessible at the time of the offense" and (2) "the person possessing the pistol, revolver, or handgun has not been issued a currently valid license under the Firearm Concealed Carry Act." 720 Ill. Comp. Stat. Ann. 5/24-1.6(a)(1), (3)(A-5). Plaintiff's complaint states that the firearm was loaded in the back seat of his car, and Plaintiff never alleges that the firearm was not uncased. [16, at ¶ 16]. In his response brief, he argues that "security guards carrying a firearm in accordance with the Act are exempt from concealed carry license requirements in Illinois." [21, at 5]. In support, Plaintiff cites to 430 Ill. Comp. Stat. 66/10(g)(2), which provides that "[a] licensee shall possess a license at all times the licensee carries a concealed firearm except * * *when the person is authorized to carry a firearm under Section 24-2 of the Criminal Code of 2012." Section 24-2 of the Criminal Code of 2012 lists the exemptions to the UUW statute. 720 Ill. Comp. Stat. 5/24-2. As explained above, Plaintiff does not qualify for the security guard exemptions to the UWW statute. Therefore, 430 Ill. Comp. Stat. 66/10(g)(2) does not exempt Plaintiff from Illinois' concealed carry requirements. And because Plaintiff does not allege facts demonstrating that Defendants lacked probable cause with respect to any of his convictions at the time of filing, his malicious prosecution claim fails. See *Cairel*, 821 F.3d at 834.

**IV.    Conclusion**

For the reasons stated above, the Court grants Defendants' motion to dismiss [18] because Plaintiff's complaint fails to state a claim for a Fourth Amendment violation or for malicious prosecution. Furthermore, as noted above, although the Court does not definitively resolve the issue at this time, it also appears likely that Defendants would be entitled to qualified immunity on Plaintiff's claims as well. In addition, as there are no substantive claims remaining, Plaintiff's indemnification claim also must be dismissed. Nevertheless, in an abundance of caution, the Court gives Plaintiff leave to file an amended complaint no later than March 5, 2021, if he can do so consistent with this opinion and Federal Rule of Civil Procedure 11. This case is set for a telephonic status hearing on March 12, 2021 at 9:00 a.m. Participants should use the Court's toll-free, call-in number 877-336-1829, passcode is 6963747.


Dated: February 3, 2021

                                                  Robert M. Dow, Jr.
                                                  United States District Judge